The next case on the calendar is Garrison v. Lee. Good morning, your honors. David Crowe for Petitioner Appellant John Garrison. This case involves a petition for a writ of habeas corpus for a state prisoner in which we argue that the state court ruling that precluded the defense from questioning the complaining witness about a recent arrest for prostitution, citing New York's rape shield law, went too far and violated the defendant's Sixth Amendment confrontation rights. Now the facts of this case are troubling. There were no eyewitnesses despite the fact that the incident allegedly took place over an extended period of time in a busy residential neighborhood. There was a prompt physical examination of the complainant that found no evidence not only of force, but also, I think very significantly, no evidence of physical bruising or anything that was consistent with the complainant's description of the incident. The whole case stands or falls on the word of the complaining witness. And that's why red flags started to go off right away when the complainant gave a false story to the initial questioning detective. The challenge is really to an evidentiary ruling or rulings. And it's the 403 type balancing that trial judges do all the time. And these kinds of issues usually are not the basis for a successful habeas petition. What is so different about this case that rises to the level of where habeas relief should be granted? Sure, Your Honor. Well, first, I guess I would point to the fact that the trial court never engaged with the defense's argument that the interest of justice clause of New York's rape shield law, which is the clause under which the trial court is supposed to balance the competing interests. So there's a New York statute very nicely designed to balance the competing interests. The trial court never engaged with defense counsel's argument on that point. And so we didn't really get a fair ruling in the state court. And the reason why it rises to the level of a habeas violation is because it went to the heart of the case in a close case. So I think that the fact that the trial court just never engaged with the Sixth Amendment issue here, despite trial counsel repeatedly bringing it to the court's attention, is something that requires serious review. For a constitutional claim, we're looking at why the application of the rape shield law here, whether there was an error in state law or not, but why application of the rape shield law here was arbitrary or disproportionate to the purposes that the rape shield law serves. And it's hard for me to see how that is the case here. I may be having some difficulty with understanding precisely what you think this cross-examination, how it would have furthered your client's defense at trial. Yes, Your Honor. So the defense which had been asserted from the very moment of the defendant's arrest was that this was a consensual encounter that took place on the street. That was the defendant's statement, and that was the pursuit throughout the trial. On the facts, as the people were able to successfully sanitize them to, this was just a very difficult defense. It was a possible defense. The people recognized that it was a possible theory, a viable theory that could have gone to the jury, but it was not that plausible, the way the case went to the jury. The difference in the case came when, on the eve of trial, the complainant went missing, apparently went on the streets, and was arrested for prostitution. Now, everybody understood the significance of that arrest. The prosecutor said, I'm disclosing it reluctantly, and I'm immediately moving for preclusion under the rape shield law. And the reason it was such a game changer was because the statute itself recognizes that convictions for prosecution are presumptively admissible. That's one of the specific... The legislative determination is that a prosecution conviction may have sufficient probative value to come in if it's not remote in time, it's specifically enunciated in the state statute. And this arrest, this arrest, not conviction, didn't fit within it. So I guess my difficulty is, it seems like the evidentiary line you're arguing is a straight propensity inference, that it's more likely that she didn't consent on the day, or that she consented on the day in question, because she may have consented to prostitution, we don't know for sure, it was only an arrest, 16 months after the incident. And that seems, first, the rules generally frankly forbid that, and it's directly contrary to the purposes behind the rape shield law in particular. So is there some other way in which this arrest was important to the defense? Well, there are, but if I may just push back on that a little bit first, Your Honor. Yes, I understand. You could call it propensity, and I don't think that's incorrect, but I think that propensity argument is recognized by the statute, convictions within the prior three years are presumptively, they're automatically admissible. And then under the interest of justice clause, my adversary at trial, I think, just completely misread the statute by saying that that means that nothing else can be admitted. What the statute is about is it creates a per se admissibility for convictions within the three years, and then everything else... That she was arrested for prostitution the night before, what did that show? It showed that this was an underage person. Our defense was consent. It must have seemed very difficult to the jury, but if the jury had known... Because she was a prostitute the night before, allegedly she must have consented a year and a half earlier? Is that the argument you wanted to make? That is the first argument, and I point to the statute... Why isn't that a propensity argument? That does sound like a propensity argument. It is a propensity argument, but remember that propensity arguments are forbidden only where there's a defendant who has some other protections against those things being admitted. We have Milono rulings, we have 403B, we have balance. And what I would just point to is the statute itself recognizes that the convictions for prostitution are extremely potentially significant, and we could call it propensity, but it's in the statute, and it's also in the Doe case, which we cite in our brief, and it's the natural common sense inference which we say we were entitled to bring. Not against the defendant who might be exercising the right to not testify, but against the complainant to confront that complainant. So we say we were allowed to make that argument, and we think the statutory framework allows us to do so. Now, the argument that invited the appellate division's assent, the district court's assent, which was brought up by George Livingston, is this concept of, well, it happened afterwards, so how relevant could it be? The answer to that, I think, is that that argument was never made at trial, and the reason that it never was made at trial, or relied on by the trial judge, is that it's also very well settled that when you're talking about bad acts, that those can be after the charged offense, or before, or they could be simultaneous. And that was the second reason I was going to disagree with Judge Livingston and with the district court, and I think we just need to think about that for a second in the context of a 403B or a Molyneux. If I rob a grocery store in a distinctive fashion, and I'm charged with that crime, the people can also bring in crimes that are committed after that event, as long as they match the pattern. And that's well settled under New York law, and I think that's the common rule. So I was really taken a little aback by the appeals courts when they said, well, the reason you can't bring it in is because it happened after the charged event. We disagree, we think that's part of the balancing test that the trial court never did. So that's as to the sequencing of the events. Now the other argument that the people put forth at trial, which I think has also caused some confusion because of the way that the statute is written, is this question of arrest versus conviction. And I just want to be very clear to lay out for the court, under New York law, it's very well settled and well understood by the parties, that the bad acts which arise to the arrest can be questioned by the opposing party at the trial. You can't ask, isn't it true you were arrested on such and such a date? But you can certainly ask about the underlying facts. Isn't it true that you committed the following acts? The arrest gives you a good faith basis to do so. So that was the argument put forth by trial counsel. We think he was correct. And the reason why it rises to the level of the habeas violation is because, the way I started my remarks today was by concentrating on the idea that this case was all about the credibility of the complainant. There were a number of red flags. And then when on the eve of trial, she was arrested for exactly what the defense theory had been all along. This was something that should have been brought to the jury. Without it, it was just a very, very difficult defense. Why would the police officer's daughter, underage, why would she possibly consent to this kind of on-the-street encounter? The prosecutor used the ruling as both a sword and a shield, and was all over that in summation. And we were helpless to respond. As trial counsel said to the jury, you've been given a sanitized version of the events. I can only ask you to be skeptical, to look beneath the surface that we did not have that one piece of evidence that we needed to make this a fair trial. I see I'm well over my time. I apologize. Thank you. We'll hear from your adversary. Hello, your honors. The state courts on the merits rejection of the defendant's due process and confrontation claims in this habeas proceeding are entitled to substantial deference. And here the state court's ruling, which upheld the preclusion of this remote cross-examination on this remote arrest for prosecution, a year and four months after the 2007 rape, was certainly not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court. So the state court upheld this ruling under the state's rape shield law. And under the Supreme Court's decision in Michigan versus Lucas, in that case, the Supreme Court upheld that state's rape shield law preclusion if that state's notice and hearing requirements were not complied with. And in that case, upheld the preclusion of cross-examination on a rape victim's prior sexual conduct with the very defendant on trial. So the Supreme Court held that the state had a legitimate interest in prohibiting such cross-examination that might result in surprise, harassment, delay of the proceedings. Here, New York's rape shield law was enacted to prevent the invasion of the victim's privacy, surprise, and here, confusion of the jury by irrelevant evidence. Well, let me ask about that. I mean, your adversary relies not so much on Lucas as on Olden. And Olden does recognize that where a line of cross-examination has strong potential to demonstrate the falsity of the complaint's testimony, it needs to come in. So his argument, in part, I think, is that we should view this record as the state having opened the door, essentially, to this line of cross-examination because of RP testifying about her exchange with Detective Johnson, and she says she was accused of an act of prostitution, that she said that's not true, and then Detective Johnson contradicts that testimony. But if you look at that, in addition to the account of the defendant, it draws into question the reliability of her account in a different way than a straight propensity argument would. So why is he wrong about that? He's wrong for two reasons. The first reason is that this cross-examination, contrary to what my opponent is saying, the counsel never asked to go into the underlying facts. He asked a question on an arrest. An arrest is proof of nothing. We all know that innocent people can get arrested as well as guilty people. So it was irrelevant for that reason. The second reason is that he wasn't completely precluded from cross-examining her on what happened. He did. And the evidence that came in was not an assertion that she was not a prostitute. The evidence that came in was that Detective Johnson had accused her that this crime was the result of her agreeing to engage in this act for money. And she said that that was not the case. That was limited to this crime. It was her testifying, this was a forcible act. This was not an act of prostitution. And the people didn't affirmatively say, she's not a prostitute, she's never been a prostitute, ever. And if you look at the summation, the prosecutor did not advance that argument. She advanced an argument having to do with the evidence that came in. And contrary to what my opponent is saying, the defendant did not originally say that this was an act of prostitution. When first questioned by the detectives, he said he'd never been there. He'd never had sex with a young woman on that day. And only when confronted with DNA evidence linking him to the semen on her jeans did he change and say, oh yes, I did have sex, but I offered her money and she agreed. And that version of the events was belied by the people's testimony, which was that her demeanor after the rape, when she arrived at her friend's door with her pants unbuckled and crying hysterically, she belied that version of the events, as did her hysterical demeanor when she arrived at her parent's house. And also was belied by the drastic change in her behavior from before the rape, when she was a normal child, and after when she had quit track, stopped talking to people, holed up in her room, tried to kill herself. It certainly was not a closed case in terms of whether this was a consensual act or an act of prostitution. And the defendant was not denied the right to cross-examine on other things. He was not denied the right to elicit inconsistencies.  And Detective Johnson testified that she had identified a different person as the assailant. I mean, he had a chance to impeach her. He had a chance to present his defense. And he was not denied due process by not being able to cross-examine on something that was simply irrelevant. And so for those reasons, also any alleged error in the trial court's rape-she ruling certainly didn't have a substantial or injurious influence or effect on the verdict. Because his statements were not believable, and hers were backed up by much corroborating evidence, including the DNA evidence. And therefore, the defendant's due process and confrontation rights were not violated. And I would just back up and say in this habeas proceeding, in order to overturn the state court's ruling, its application of federal law, that can only happen if it was so erroneous that there's no possibility that fair-minded jurors could disagree that the state court ruling has conflicted with Supreme Court precedents. And clearly, that's not the case here. Particularly since the district court found that the state appellate court had applied federal law correctly. So for all those reasons, I would urge this court to affirm the district court's dismissal of the habeas petition. If there are no further questions, I'll rely on my brief. Thank you, Your Honor. Mr. Crown? Yes, in rebuttal, just very briefly on my adversary's again purported distinction between arrest and underlying facts, I just want to make clear the defense made clear at trial they wanted to ask the complainant about this incident. They used the phrase arrest. It was a term of art. Everybody in the courtroom knew it was to get at the underlying facts. And the people certainly never argued below, and the trial court didn't rest on that distinction. So it's a well-settled matter under New York law, and I don't think should cause us any difficulty. On Judge Livingston's question about, well, what do you have, Mr. Crow, besides propensity in this case? Was this a case of door opening? I would just like one court to look at this very complex, unusual case and the strange things that happened. It's not every day that you get a complainant coming in, telling a false story, and then compounding that with this very strange story about the detective having accused her of being a prostitute, so her feelings were hurt, and that's why she didn't cooperate. Detective Johnson said that none of that happened, and that was a fabrication. So those were red flags number one and number two, and as the court suggested, not being able to rebut the complainant's strange version of that interview with, again, who came up with the idea that he were a prostitute? Was that a sex crimes detective who accused you of that, or was that something that you might have been aware of because that was lurking in your own mind, and indeed on the eve of trial comes up with another arrest? So I would just ask the court to consider that in practical terms. What did that mean in the context of a trial, and my client's right to a fair trial? Was the case, as trial counsel said, heavily sanitized? We say that it was. In a case that was this close, that rested entirely on this troubled young person's word, and everything that my adversary has talked about ultimately gets back to the complainant's word. We would just invite the court to look at that, and we thank you for your attention. Thank you both. That's the last case on the calendar, and it was nicely argued. I will take it under advisement.